1720174 McClendon v. United States and we'll hear from Mr. Knight first.  Steve Knight on behalf of Gail McClendon, who is the substitute appellant since her husband, Dr. McClendon, passed away after we filed the notice of appeal. This is an appeal of an order granting the government's motion for summary judgment on its claim under 26 U.S.C. section 6672 concerning FPA's past due withholding taxes, which resulted in a judgment of $4.3 million against Dr. McClendon individually. The judgment must be reversed because FPA paid all material funds to the government after Dr. McClendon became aware of the unpaid taxes with the exception of a $100,000 loan that FPA obtained from Dr. McClendon for payroll purposes. Even if this loan was unencumbered, as the government has argued, it is not sufficient to support a judgment of $4.3 million against Dr. McClendon as a matter of law. Under 26 U.S.C. section 6672, a responsible person who willfully fails to pay over the withheld taxes may be liable to the government individually under certain circumstances. But in order to be liable, there must be willfulness. Willfulness involves a considered decision to not pay the government the taxes owed, evidenced by payments made to creditors other than the IRS after the individual has knowledge of the taxes owed to the government. Liability extends to the amount of unencumbered and available funds not paid to the government after the responsible person becomes aware of the taxes that are owed. So that limitation is critically important in this case. And the best example of the implementation of that limitation is what this court decided in the Barnett v. IRS case in 1993. In that case, the taxpayer became aware of the unpaid taxes, which were more than $600,000 on April 12th of 1982. During a bench trial, what evidence came to light was that more than $492,000 had been deposited into the company's account, but the responsible person did not use that money to satisfy the outstanding amounts owed to the government. Don't you think the critical thing is that there was actually over $600,000 owed in withholding? It is. But $492,000 was deposited after Mr. Barnett found out. Right. So $492,000 was deposited after Mr. Barnett found out. So he wasn't held liable for the whole $600,000 and some thousand. Precisely. That is the critical fact of the case. The only evidence in that case was that the amount of available and unencumbered funds was $492,000. Consequently, because the taxpayer, post-awareness, did not use those funds to pay the government, this court rendered judgment for that amount only. It did not render judgment for the full amount of the tax penalty. That's critical. How do you get from the amount of $10 million that was the total amount not paid down to the $4 million that the IRS wants from Mr. McClendon? I'm not sure exactly how that was determined by the government, but what's clear from the record is that the only amount that was assessed, the only penalty at issue, was $4.3 million. And you didn't dispute in the record below that amount? That $4.3 million was the amount of the penalty? Yes. No. That was the assessed penalty. Okay. I guess Barnett seems to be the controlling law, I agree, but then isn't it? It's really just a very, very specific fact inquiry, which is were there funds available? And you say there weren't because the monies paid to the IRS were all that we had? Is that your argument? Well, my argument, Judge, under Barnett, is that if the government's theory is that Dr. McClendon is liable for the entire $4.3 million penalty, which was their theory, then there must be record evidence here that $4.3 million or more was both available and unencumbered at a period of time when Dr. McClendon became aware of the taxes owed and that he then failed to pay that amount to the government. And that's the problem in this case. There is absolutely no evidence that any amount of money, even approaching $4.3 million post-Dr. McClendon's awareness, was available and unencumbered and therefore should have been paid to the government. Why wasn't that your burden to show that the money was available? Why wasn't it Dr. McClendon's burden? Even if it was Dr. McClendon's burden, when he responded to the government's motion for summary judgment, which I think it's also very critical that the Court note, what was the government's argument? Under cases like Barnett and under cases like Mazo and Wood and Turnbull, all of which involved a penalty that was affirmed, the full amount of the penalty, because, as the Court pointed out in those opinions, there were available unencumbered funds in excess of the amount of the penalty. That's why the full amount of the penalty was affirmed in those decisions. What other cases are there that say that if you don't pay, let's suppose he found out on May 9th and on May 15th he had paid $100 debt to some other creditor than the employees that paid a bill for $100 out of the FPA funds that he should be liable for the whole $4.3 million. Is there any case that says that? No, and that's the problem. That's their theory in this case, and it is fundamentally at odds with cases not only from the Fifth Circuit but cases beyond that. It could have tried to show recklessness for the preceding period, but there's nothing in Judge Rosenthal's opinions that affirms a finding of recklessness. Well, that's true, and their summary judgment argument made the alternative argument on recklessness, but then when they filed their reply, they abandoned that. They withdrew it, and Judge Rosenthal never reached it. I guess I'm still stuck back on the question Judge Davis asked. If it is your burden to show what funds to meet  where did you meet that burden? In the summary judgment response. So the government files their motion for summary judgment under the rubric of Barnett and all the key cases that we've just discussed, and critically, because they were after the entire $4.3 million penalty, their argument was this. It's found on page 17 of their summary judgment motion, Record on Appeal, page 101. Their argument was from January 2006 through July 2009, Dr. McClendon allowed $7.5 million to be paid to non-IRS creditors at the critical period of time, meaning after he became aware. So that's their theory for why Dr. McClendon should be liable for the entire penalty. That's consistent with their case law. There's nothing in those other cases that indicates that the defendants came in, the taxpayer came in, opened up its books, which presumably the IRS looked at anyway here, opened up its books and said, here's where the money came in, that's all that we had. Right? I mean, there's nothing that indicates when the IRS position is, you paid this $100,000, therefore you're liable for the $4.3 million, then I don't see how you have to prove that every, and you show that all this other money,  and you paid them to IRS. I don't see why that doesn't discharge whatever burden you have. And I agree with you, Judge Jones. I'm sure you do. I think it absolutely does. And that's the thing here is when the government pins its tail on, here's the argument where I think Dr. McClendon has $4.3 million in liability, as the summary judgment non-movement, Dr. McClendon comes forward to address that argument. And to reach your question, Justice Higginson, what Dr. McClendon did here is, first of all, keep in mind that when the government moved for summary judgment, it had the benefit of Dr. McClendon's bank records, all of the stuff that they were premising their argument on, bank records from 2006 through 2009. So all of that was already in the record. Dr. McClendon goes above and beyond that. Dr. McClendon says, okay, let's get the date of awareness correct. The date of awareness is sometime mid-May 2009. So the relevant inquiry here is what amount of money was paid out in available and unencumbered funds after May of 2009. In his affidavit and in his deposition testimony, Dr. McClendon swore under oath that no vendors were paid after he became aware of the unpaid taxes. He swore under oath that all accounts receivable in the future are pledged to the IRS, which notably in the Barnett case, he didn't even have to do that, but he did it, and it was pledged. He swore under oath that all existing and future funds were paid to the IRS. He didn't just say these things. The summary judgment record demonstrates that, in fact, $274,000 above that was paid to the IRS. We showed the check. Demonstrated that $161,634 was paid to the IRS. Demonstrated that $134,880 was paid to the IRS. Those last two payments, by the way, make up the $300,000 that the government has claimed Dr. McClendon somehow didn't prove what happened to those funds. It's in the record. Those funds, as all others, were paid to the IRS. If he had other money, he wouldn't have had to loan money to the group. If family practice had other money, it could have made the payroll if that's what it wanted to do, although Dr. McClendon knew better. He knew that if whatever money was in the account, he's pledging it to the IRS. But, see, I mean this didn't even come up on summary judgment to begin with, which leads me, Judge Rosenthal being a very careful judge, to infer that she was ruling on the only two issues that were raised, and that was, number one, encumbrance, and, number two, reasonable cause, sort of the moral argument. And if there had been a third dispositive argument, that anyway he did not bear his burden to prove that there were not available funds, she would have ruled on that too. I think that that's probably right. And I think where things got off track in this case all comes down to the reply argument that the government filed. I think the government realized that Dr. McClendon clearly defeated the summary judgment argument that somehow $7.5 or $4.3 million, some substantial amount of money existed post-Dr. McClendon's awareness that was not paid to the government. So what they argued instead is, Aha, Dr. McClendon has now admitted that the $100,000 loan was not paid to the government, and even though he argues that those were encumbered, we think that they are unencumbered, and that should support liability for the entire penalty as a matter of law, is what they said. And unfortunately, Judge Rosenthal went with them on that argument, but I think it's wrong procedurally and substantively. Substantively, first and foremost, because it's contrary to every case out of the Fifth Circuit that limits a taxpayer's liability to the amount of available and unencumbered funds that come into existence after awareness that the taxpayer does not pay to the government. So if that amount here is $100,000, $100,000 cannot support a judgment for $4.3 million as a matter of law. But the premise is that that is all the money that you showed if my analysis is right, that you showed the only money they had was the $100,000 other than what they gave the IRS. That is correct. Now, they've made issues, as I mentioned a moment ago, about the $300,000 closing balance in the account, but as I've pointed out, and it's in the briefs, those checks are accounted for. That money was paid to the government. But they had access to FPA's books and records by this point, right? They attached them to summary judgment exhibits. So they knew the amount of funds. This can't be a matter... I mean, it's not disputable by either party. It's either there's either funds or there are not. And there is not. And I think that what's also telling, and I want to point this out, is when we move for reconsideration saying, wait a minute here, the $100,000 payment under binding the circuit precedent cannot support a $4.3 million judgment, this is wrong under the law. The court denied the motion for reconsideration, and the court said something that I think is both interesting and extremely problematic. It indicated that Dr. McClendon had the burden to submit or identify record evidence showing that he was not liable. Well, first of all, Dr. McClendon clearly did that. Second of all, when the government has argued based on that language, is that it was Dr. McClendon's burden to come forward with a full accounting. I think what the judge is talking about, she said the burden of proving that the responsible person did not control sufficient funds to pay the tax liabilities on the taxpayer, and you never came forward with that evidence. But that's what I would direct you to the summary judgment response. That evidence was clear in the deposition testimony, his extensive affidavit where he testified that all money, with the exception of the $100,000 loan, was paid to the government. That is in the summary judgment record. And that's why in their reply they seized on this admission concerning the $100,000 and made this extra argument that a $100,000 payment can support liability for the entire penalty. That is contrary to this court's binding authority, and we respectfully submit, Judge Rosenthal, I err, the government's arguments are an overextension, and the judgment must be reversed and the case remanded. All right, we have time for rebuttal. Ms. Erickson. May it please the Court, Marion Erickson for the United States. Your Honors, I think the problem here, the disconnect that I'm hearing is that Mr. McClendon's attorney asserts that he did in fact prove that all unencumbered funds were paid to the government after he knew on May 11, 2009. Well, you had the books and records. Don't you know the answer to that yourself? Your Honor, it was not our burden to prove. This is how... It's in the summary judgment. It's not disputable. It's not a matter of burden. It can be... I mean, I don't understand. You either have a bank balance in the books and records and these checks paid out, if you think somehow something to cash was, you know, siphoned off to an illegitimate purpose. I mean, but if no checks were paid, and he swore that nothing was paid, and they hired a lawyer... Yes, he swore that nothing... This is what he said. All the money we had went to the IRS. That is not enough proof that there were no other monies, particularly when it was demonstrably false, because he, in addition to the $100,000 that he paid through the company's bank account to pay employees instead of the IRS, he and the other doctors also formed this company, this limited liability company, MST, where they put some of their own money in... Why do you argue that to the court? When was that ever brought up to the court? Well, this is the problem. It wasn't because the appellant didn't make this argument. He did not make this argument until too late. He's claiming that we waived an argument by telling the judge that it was an alternative argument he didn't have to reach, but, in fact, he waived the argument that there were insufficient funds because it's his burden. It's part of the willfulness test. Let me ask you a question, then, because how is it that in every one of the Fifth Circuit cases, including Barnett, it has always been the case that there were excessive available funds to pay those amounts, although in Barnett, willfulness was not attached to the whole $600,000 that was owed.  that was misdirected, allegedly, after the person became aware? Well, that's right, Your Honor. Well, where does it ever say that the taxpayer who seeks a refund under these circumstances is willful unless he brings forth all the books and records of the company, which both sides have looked at by that time, to say that there are no other available funds? What's wrong with an affidavit? I respectfully disagree that it's clear from the records that we had everything, that we had all the bank statements. And even if we did, it wasn't our burden to go through and look at every deposit and make an accounting. That was what the taxpayer should have done. And second, and perhaps more importantly, he did not make this argument until his motion for reconsideration. Well, now, why didn't he make that? That's because you brought it up in your reply brief. That's incorrect, Your Honor. I respectfully disagree with that. We said in our complaint that he was liable for the entire $4.3 million, and we said if he paid any creditor other than the IRS after he knew, that meant he was willful as a matter of law. And Barnett and all those cases stand for that proposition. It just so happens... ...stand for that proposition with due respect. Not one of them says that you are liable from the beginning of, you know, world history because you have misspent a certain amount following your actual knowledge. More specifically, I believe what those cases say is that if you are proven to have been willful by paying any creditor other than the IRS after you had actual knowledge, then you are considered willful for all the periods during which you were a responsible person. No, that's not what Barnett says. That is absolutely not what Barnett says. It's liable for everything after you became knowledgeable. Now, there may be Ninth Circuit authority that supports you, but that's not in the Fifth Circuit authority. Well, I respectfully disagree, Your Honor, but the point here... In Barnett, that was a government concession, right? That's footnote 19. So that was a government concession. You're liable only for things after. We conceded that it was only the...  That wasn't a statement of law. No, that was also the... I'm curious more generally, do other circuits have the Barnett limitation capping it only as to available funds, or is it all or nothing, you're on the hook for $11 million? No, Your Honor, this is the point I'm trying to make. We're not... We don't disagree. I know you don't, but I'm just asking you, is that a universal rule, or is it a Fifth Circuit-only rule? No, I believe that's the rule in most of the circuits. But it's a defence. It's an insufficient funds defence. It's a defence, exactly. And it needs to be raised by the defendant, and it needs to be raised timely by the defendant. And is Judge Jones' earlier question correct, that here the arguments made to Judge Rosenthal was arguably a moral one, and then it wasn't encumbered, it wasn't triggered? Exactly. So when is your view in this record that the first time the Barnett insufficient funds defence was raised by McLendon? It is considered for reconsideration. OK. I think it's fairly clear that he didn't bring it up. And then Judge Rosenthal's twin answer to that was, I don't see that you've met your burden to prove it. In fact, I believe he said you didn't prove it up, that he disregarded the blanket statement that we gave the IRS all the money, and in part I think he did that because that wasn't true. The $100,000 that came in was not encumbered under any definition. He contributed that. That's a heck of... We understand that that is a very unfortunate anomaly here. He gave it out of his own funds, so he's not... You know, you're not arguing that he was part of the fraud and the implication otherwise is vile. No. The man's dead. No, I understand that, Your Honour, and I understand that he's sympathetic for many reasons. But the statute, as it's written... He couldn't make his proof if it goes back to trial, according to you. He's dead. He can't make his proof. If, as the attorney says, everything's in the record, it would be a simple matter for them to show in accounting. That's sort of my opinion. However, they didn't do that, and they didn't even raise this argument until it was too late. So that is our primary argument why this... I'm not saying that if there were insufficient unencumbered funds, it would be limited to that. I'm just saying that it's part of the willfulness requirement on which he bears the burden of proof. Let me just put this... The way I thought that this record was being developed was that the government said, all you... We'll acknowledge that you had notice of this in May, but you were liable for the... And then ordinarily your liability would be cut off except for the fact, government position, that you put in $100,000 with this fake promissory note to pay the employees. And therefore, because you willfully mispaid $100,000, we're going to hold you liable for the whole thing, which raises a good legal argument based on what do Barnett and Locale and all those cases say, right? And I thought that was all you said in response to his motion for summary judgment. It was our motion for summary judgment. Well, I thought there were cross-motions. OK, your motion, you did not say, quote, he did not prove there were other available funds, no other available... Which would have been his... No, but... He didn't argue that there were insufficient unencumbered... But it's your motion. How can he... Yes, in our motion... OK. In our motion, we said that based on the reckless disregard theory, which would have gone back further, that there had been deposits into the bank account that would have been sufficient in earlier quarters. We also said that if he made a payment to any creditor, he was then therefore willful. And then we come along later and specify, for example, this $100,000 was a payment to another creditor. How is that a new argument? We were not arguing the insufficient funds because he didn't bring it up. In his reply, or his opposition to our motion for summary judgment, he never said there were insufficient unencumbered funds. And had you filed a reply to his motion at that point, when Judge Rosenthal ruled? Yes. You had filed a reply? Yes. I mean, I'm just saying, I thought... I would have thought that Judge... Since that would have been, in your view, a dispositive argument, she didn't have to rule on the $100,000 at all. She could have just said, he hasn't made his proof as to the rest of the money that came in or went out of the FTS. He hasn't made any argument on this side MTS or whatever that company was. Well, she didn't actually reach that. She didn't talk about that. Well, that would have been dispositive, overarching, incomplete. And she didn't have to get into any stuff about the $100,000 being an encumbrance. If your argument is correct... Well, I'm not quite sure I... What role does the encumbrance argument play in this scenario at all? You mean whether the loan was encumbered funds? Right. Right. Because if it's no defence... I mean, the overarching defence to you is, he found out he didn't prove that not a single dime was mispaid to anyone other than creditors otherwise. He didn't prove it, all of it, and therefore he loses. Courts have described the statute as harsh, but necessarily so because of the purpose it serves. But you never argued it that way, did you? We didn't argue that there were enough funds? Correct. We didn't have to make that argument. It was not our burden to make that argument. But that's because you couldn't make that argument because there were no funds that were mispaid. The only things you've ever come up with are $1,800 and $2,000, and he says those were coming from completely separate accounts that had nothing to do... Now, you've brought up this MTS as separate deal, but you cite nothing about that. Well, Your Honour, in truth, I'm not aware of any cases that specifically deal with this situation where responsible persons can take money, create another shell company or whatnot, and funnel payments to pay company expenses. But just on a very logical... Did you do that with any accounts receivable that were created after Dr McClendon had knowledge? We do not know. We don't know how much money was even in that account. Excuse me. You audited him, you audited the company. This has been going on since 2009. When he reported it, you never charged him or his estate with fraud. It's ten years later. This is a civil case, Your Honour. I understand, and the statute of limitations for fraud is five years, isn't it? I don't believe there's any statute of limitations for tax fraud. I thought there... Well, okay, maybe not tax fraud, regular fraud. Why the discrepancy between the $11 million that wasn't paid and the 4.3? Because under the statutory scheme, not all of the withheld payments are considered trust fund payments, so the bulk of that we will never recover. It's just impossible. The statute gives us the right to go after some of the monies that are not paid over but not all of them. It's in a footnote in our brief. It is, okay. But that's unrelated to whether sufficient funds exist or not. You can never get close to $7 million that we're owed. It's unrelated, yeah. Let's see. I don't think there's any real question about whether that $100,000 was encumbered. It was an agreement with himself. It was an alleged loan, but there wasn't any language in the loan agreement saying it was only to be used to pay payroll, and it certainly wasn't security interests held by another entity that was superior to the government's interests.  The question of whether responsible persons can put money into another entity and use it to pay the company's expenses. In that case, in fact, as the taxpayer points out, they actually put their own money into the company's account and then paid it, but the court said that's not the point. The point is it's the use to which the funds are put, and they use this money to pay company expenses, grants and utilities, and so on, rather than paying the government. Why shouldn't this case go to trial? I mean, Barnett went to trial. Well, Your Honor, we filed a motion for summary judgment, and the judge granted it. The reason not to remand is that that gives him a second bite at the apple. He failed to meet his burden below. He failed to raise this argument timely. He essentially waived it, and there's no— When you put the book—is it correct that you put certain aspects of the book and records in the summary judgment motion? Your Honor, I apologize. I don't recall exactly what evidence we put in the summary judgment motion. Well, if that were true, that stands in evidence, does it not? And any inferences could be drawn by that. I am not at all certain that there's sufficient evidence in the record as it stands to make a determination of exactly how much money was available. That would be important. That's an important statement. That was my understanding of the record, but it would be very important if there's a different way to look at this case. I apologize that I don't have a definitive answer, but I don't believe— I'm just not sure whether every bank statement of every account for every period in issue is in the record. The government's original position was that Dr. McClendon's transfers were reckless and significant before he knew, but he should have known because he was reckless. Then there were the $100,000 transfer once he knew, and then after disillusion or liquidation of this company, he created another company, which then implicates, if it were to go further, law and other circuits about would he be responsible even because of these other companies created. So it's before, during, after. The government's position was he's transferring a lot with knowledge, reckless disregard of knowledge, and after. Correct. But his view— The standard for willfulness has two alternatives, actual knowledge and then reckless disregard of a known or obvious risk. Dr. McClendon, he was a doctor. He was running his practice. He was the president, the majority shareholder, but he paid apparently no attention whatsoever to the financial side. According to the facts in the record, this CPA or controller or whoever it was, he was operating with virtually no supervision whatsoever. That is a recipe for disaster, and disaster ensued. I mean, he didn't ever prepare regular financial statements for the company. There was no oversight, even when several employees, including Dr. McClendon, received statements. You're not willing to say that's true as a matter of law, are you? I believe this court could find as a matter of law, based on the facts in the record, that he was reckless. That would be a pretty surprising thing to find recklessness as a matter of law under any circumstances. I believe in the Logal case, which you wrote, Judge Davis, you did hold that the burden of proof regarding willfulness is on the taxpayer, and that includes showing that there were insufficient encumbered funds. And I believe— Is that decent? What case is that? Logal, L-O-G-A-L. That's a Fifth Circuit case. And I also— I was looking at a case earlier that said that the question of willfulness and reckless disregard can be decided as a matter of law. It's not necessarily a fact question, depending on what's in the record. I think that if this— Well, that went to trial, and then this court reversed and remanded— and that he was liable for part but not all of the assessed— Yes, and in Barnett, the taxpayer made a showing of how much funds were available. No, there's nothing in the record about that. There just isn't. Well, I believe that he must have raised that issue in order for it to have been before the court. I'm not sure how else it would have come up. The government made a concession, I think. I don't think so. Well, just to finish my argument about reckless disregard, I believe this court could affirm on any ground, and in this case, Dr. McClendon was not fulfilling his duty to be the steward of resources of the company and to take care that things were going properly and that the financial operations were up to snuff and that, in fact, the taxes were being paid, which is frequently a danger in a corporation where only one person has control over the finances. No, what the government said is— Barnett, I don't wish to be thought that I'm misreading, misstating the facts and, you know, attacking people without basis. On appeal, footnote 19, the government makes no claim to any unencumbered assets that the company may have possessed as of April 12th. The government only focuses on assets received after that date. In other words, what they were talking about was accounts receivable that hadn't come in as of the particular date, which had to do with the amount of funds that became available, not with, you know, what we're talking about here. Well, Your Honor, I repeat our position, which is that we did not raise the issue timely and, therefore, he's not entitled to raise it now. I understand. Well, if the Court has no further questions, we'll rest on our brief and respectfully request that you affirm. Thank you. Mr. Knight. May it please the Court. I'd like to address just some of the points that were raised by the government. First of all, this notion about when the government raised this argument that the $100,000 can support the full amount of the penalty, 4.3, as a matter of law, the question was asked when was that raised and, in fact, wasn't it raised at the reply stage? And the answer to the Court was that's incorrect. Well, I would direct the Court to what the government argued when they responded to the motion for reconsideration. This is from their own brief at page record 874. The United States said, quote, the United States in its reply informed the Court that if it agreed that the $100,000 paid to the employees was from unencumbered funds that McClendon would have acted willfully and that was their argument that it should support the entire judgment. They conceded that that issue was raised for the first time in their reply, and it was. As I've emphasized throughout my argument, the government's ground for summary judgment in recognition of the Fifth Circuit authority and Mazo and Turnbull and all the cases that we've talked about today, the government's argument was that Dr. McClendon allowed $7.5 million, an amount in excess of the penalty, to be paid after he became aware of the taxes. So Dr. McClendon has to look at what is the argument for why I should be liable for $4.3 million. Government says that at the relevant time, post-awareness, I allowed $7.5 million to be paid to somebody other than the IRS. I've got to defeat that notion, and that's precisely what Dr. McClendon did. And in particular, when Dr. McClendon points out all of the payments to the IRS that supports his sworn testimony, sworn affidavit, that everything was paid to the IRS with the exception of the $100,000 loan, the idea that he somehow didn't meet any burden of proof to demonstrate that the company didn't have available and unencumbered funds at that point to pay the government makes no sense. Of course he met that burden if that was his burden. If the company has no funds other than the $100,000, then he's met his burden of proof that the company doesn't have any other available funds to pay the government. The government, exactly what books and records did the government put in in connection with their motion for summary judgment? Among other things, the government put the AMIGI operating bank accounts, that's their Exhibit 4 for July of 2009, they attached in support of their key summary judgment argument, I mean, let me just read from the argument. Attached as Exhibit 8 are the front pages of the bank statements for one of Family Bank's accounts for each month from January 2006 through July 2009. So they attached all of these statements from the bank that show the beginning balance and the ending balance. And they argued based on that that clearly $7.5 million was expended and therefore Dr. McClendon should be liable. Dr. McClendon says no. Well, let me make this point. After May of 2009 is when this all hit the fan, right? Correct. And after May of 2009, I presume that the cover sheets of those bank statements show the balance declining to zero, right? They do. Well, the $300,000, but for the $300,000, correct? Correct. But importantly, the record shows that that $300,000 was paid to the IRS. I understand that. But my point is that after that date, those sheets are vouched for by the government and they show no funds that were available to the IRS. I don't want to misrepresent the record. I think that some of the payments, that closing balance was made after the cutoff of the July statement, but it's in the record nevertheless. All I'm saying is that under standard rules of evidence, they vouch for what they put in. Yes. But the district court doesn't have to pour through the records and come up with a conclusion that you had the obligation of pointing out to them. They didn't have to, Judge. I mean, where in your district court did you brief the court and say there was no available funds available? In the deposition testimony cited to the court, in the affidavit where Dr. McClendon swore, and his whole argument was premised on the idea that we paid everything to the government. All vendors were cut off. The only exception is the $100,000, which Dr. McClendon's argument at the time, reasonably so, is not that you therefore enter judgment against me for $100,000. His argument was, from our perspective, the $100,000 is encumbered. You don't get that either. That doesn't support the theory either. Government files response and changes their theory outright and says if you find $100,000 is unencumbered, which it should, that supports liability for the entire penalty as a matter of law, and that statement as a matter of law to the court, the court accepted it, and it is fundamentally false. $100,000 does not, under any case, particularly fifth circuit authority, support the imposition of a $4.3 million penalty. The opposite is true as a matter of law, and that's why this court must reverse. Okay. Thank you. Thank you.